UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11976-RWZ

JOSE SEMEDO

v.

LON L. ELLIOTT
and CITY OF BROCKTON

ORDER
June 28, 2012

ZOBEL, D.J.

Plaintiff Jose Semedo, a black man of Cape Verdean descent, brings this action against former Brockton police officer Lon Elliott ("Elliott") and the City of Brockton ("the City") under 42 U.S.C. § 1983 as a result of his arrest by Elliott on November 20, 2007. He alleges that Elliott violated his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution because the arrest was unlawful and racially motivated.[1] He further alleges that the City is liable because it failed to adequately train, discipline, or supervise Elliott, thereby demonstrating deliberate indifference to plaintiff's rights and a policy of tolerating discriminatory behavior by its officers that was the moving force behind the alleged constitutional deprivation.[2]

---

[1] In addition to claims under 42 U.S.C. § 1983, plaintiff sues Elliott for violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11H-I, abuse of process, and false imprisonment. Compl. (Docket #1). The City has filed a cross-claim against Elliott for indemnification. Def. City of Brockton's Am. Answer and Cross-Cl. (Docket # 6).

[2] See Monell v. Dep't of Soc. Servs., 426 U.S. 658, 694-95 (1978) (holding that a municipality may be liable under section 1983 only if by official policy or custom the municipality directly causes the alleged constitutional deprivation), and City of Canton v. Harris, 489 U.S. 378, 388 (1989) (holding that

Discovery is closed.  The City has moved for summary judgment (Docket # 21), which plaintiff opposes.  Elliott, who is not represented by counsel, has neither responded to the complaint nor to the City's motion.  Because the undisputed record requires the court to draw inferences which are inappropriate on summary judgment, the motion is denied.

**I. Background**

It is undisputed that Elliott, accompanied by three other Brockton Police Department ("BPD") officers, arrested plaintiff while he was at work on what Elliott claimed was an outstanding warrant for larceny of a bad check. Pl. Am. Resp. to Def. City of Brockton's Statement of Undisputed Material Facts (hereinafter, "Pl. Resp. SUMF") ¶¶ 3, 5, 6, 30.  Plaintiff claims that he had resolved the warrant issue at Taunton District Court the day before and told Elliott as much, but to no avail. Id. ¶¶ 33-34.  During the arrest, Elliott told the plaintiff: "Listen to me, you f.....g African Jungle Bunny.  You owe somebody money . . . you people are destroying my City." Id. ¶ 8. Elliott also made ape-like gestures while behind plaintiff's back, by scratching under his armpits and jutting out his lower lip. Id. ¶ 9.  On the day of his arrest or shortly thereafter, plaintiff verbally complained about Elliott's conduct to the BPD, id. ¶ 11; in January 2008, he filed a written complaint with the BPD's Internal Affairs Department ("IAD"), id. ¶ 12.  The latter resulted in a five-day suspension of Elliott and, after a hearing, his termination from the BPD in January 2009. Id. ¶¶ 19-28. Plaintiff filed this

---

inadequate training may serve as the basis for section 1983 municipal liability only where it amounts to deliberate indifference to the rights of persons with whom the police come into contact).

case on November 16, 2010.

## II. Analysis

The City argues that summary judgment is warranted because there is an "absence of evidence" to support plaintiff's claims. Def. City of Brockton's Mem. Supp. Mot. Summ. J. 3 (Docket # 22) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (holding that the party moving for summary judgment may prevail by showing that there is an absence of evidence to support the nonmoving party's case)). It argues that the evidence proffered by plaintiff does not establish that the City had a policy or custom of deficient training, discipline, or supervision of its police officers such that it was deliberately indifferent to the constitutional rights of its inhabitants, much less that such policy or custom caused plaintiff's harm.

Plaintiff strenuously disagrees, pointing to a list of 200 complaints against individual officers filed with the BPD between 1996 and 2009.[3] See Pl. Resp. SUMF ¶ 59 and exhibits cited therein. The list was produced by the City in response to one of plaintiff's interrogatories, which requested that the City provide any IAD "annual or internal reports, summaries or statistical information including but not limited to: complaints of misconduct, harassment, discrimination, abuse of process, conduct unbecoming, and any other administrative complaint from January 1, 1996 through Present." (Docket # 35 Am. Ex. R). Plaintiff also cites to twelve additional complaints

---

[3] The list is mostly handwritten and difficult to decipher. The number of complaints varies by year. According to plaintiff, the list includes complaints against thirty-one officers filed in 1996, twenty-one in 1997, nineteen in 1998, fifteen in 1999, twenty-two in 2000, five in 2001, sixteen in 2002, twelve in 2003 and in 2004, eleven in 2005 and in 2006, four in 2007, seven in 2008, and thirty-four in 2009. The City does not dispute these numbers.

3

that contain specific allegations of racial discrimination against twenty-nine BPD officers. See Pl. Resp. SUMF ¶¶ 59-71 and exhibits cited therein.  Three of the twelve are court proceedings,[4] of which the court may take judicial notice. Fed. R. Evid. 201; Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").  The other complaints were lodged with IAD[5] and require the drawing of inferences about the seriousness and nature of the conduct alleged and the adequacy of the BPD's response.  Plaintiff asks the court to view the totality of incidents as widespread, systemic, and clear evidence that the BPD had

---

[4] Owens v. Baez et al., No. 00-cv-11140-WGY (D. Mass.) (case settled; stipulation of dismissal with prejudice and without costs entered on June 4, 2001); Summers et al. V. City of Brockton et al., No. 09-cv-12006-DJC (D. Mass.)(case settled; stipulation of dismissal entered with prejudice and without costs on Feb. 2, 2012); Davila-Lynch et al. v. City of Brockton et al., No. 09-cv-10817-RGS (D. Mass.) (case is active; jury trial currently set for July 30, 2012).

[5] Docket # 31 Ex. E (2009 complaint by Jaime Ward officers alleging that officers referred to "you kind of people" during arrest);
  id. Ex. G (March 20, 2000 complaint by Aafaque Akhter alleging that an officer acted in a biased manner towards him while the officer responded to a neighbor's call in 2008. After investigation, BPD responded with a June 21, 2001, letter informing complainant that "we are unable to prove or disprove the officer acted in a partial, bias [sic] or unprofessional manner.");
  id. Ex. H (April 2000 email complaint from Shervonne Christmas alleging that she and her fiancé (both African-American) were treated differently than a white man, and in a rude an offensive manner by BPD officer.  Complaint was forwarded to the BPD Chief Paul Studenski by Plymouth County District Attorney Michael Sullivan);
  id. Ex. I (complaints by minorities Mario K. Jack (May 2001), Raymond Campbell (July 2001), Robert Jackson (Nov. 2001), Louis Johnson (Nov. 2001), and Filipe Teixeira (May 2002) alleging racial profiling or racist behavior by BPD officers);
  id. Ex. J (December 2002 complaint by Marie Narcisse alleging that, after a traffic stop, BPD officer rolled down window, started laughing and said, "Happy birthday, f.....g Haitian."  BPD responded with March 26, 2003, letter informing Ms. Narcisse that the officer was "informed such behavior is unacceptable conduct and any substantiation of future behavior of this nature may result in disciplinary action.");
  id. Ex. L. (July 2007 complaint by Stanley Fombuh alleging that he was falsely arrested and discriminated against because of his race.  BPD responded with an August 16, 2007 letter informing Mr. Fombuh that, based on arrest report, the officers had "more than enough probable cause" to arrest him, and that the officer involved denied using swear words, but was reminded that use of swear language is against the BPD's rules and regulations).

serious issues with discrimination, racial profiling, and other civil rights violations by its officers, and consciously failed to implement additional training or discipline in response. The City, on the other hand, insists that these complaints do not, as a matter of law, establish deliberate indifference but rather are merely conclusory allegations of a custom, practice or policy of civil rights violations by BPD officers.

Either way, the court must draw inferences regarding the seriousness and pervasiveness of the offenses alleged, which are inappropriate on a motion for summary judgment. See Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) ("If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment."); cf. In re Varrasso, 37 F.3d 760, 763 (1st Cir. 1994) (vacating district court's grant of summary judgment in bankruptcy action, noting "summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record.").  Even if the court were to draw such inferences, summary judgment would be improper given the court's obligation to draw all reasonable inferences in favor of the non-moving party. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

It is likewise inappropriate for the court to determine that plaintiff cannot prove causation, since causation and deliberate indifference are often intertwined. Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2004).

The motion is denied.

| | |
|---|---|
| <u>June 28, 2012</u><br>DATE | <u>/s/Rya W. Zobel</u><br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |